ORIGINAL

IN THE UNITED STATE DISTRICT COURT

FOR THE DISTRICT OF HAWAII

|  |  |  |
|---|---|---|
| OF AMERICA | ) | MAGISTRATE'S NO. 03-0453 LEK |
| Plaintiff, | ) | CASE NO. 03-456 (WHW) |
| vs. | ) | |
| EDWARD PICKERING, | ) | |
| Defendant. | ) | |

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JUL 0 1 2003

at 12 o'clock and 29 min __M
WALTER A. Y. H. CHINN, CLERK

Before the Honorable Leslie E. Kobayashi, U.S. Magistrate Judge, District of Hawaii, Honolulu, Hawaii.

The undersigned deponent being first duly sworn deposes and says:

That he is an Postal Inspector with Postal Inspection Service; that he is informed and believes and, on the basis of such information and belief, alleges that on 06/13/03, an Indictment was filed/returned in the District of New Jersey, at _____, charging the above-named defendant, Jon Edward Pickering, with violating 18 U.S.C. §§ 371, 1343 & 2 in that he conspired to commit wire fraud (Indictment attached hereto).

That deponent is further informed and believes and on the basis of such information and belief, alleges that an arrest warrant for the above-named defendant was issued upon said Indictment in that district.

That deponent is further informed that _____ at _____ ordered/recommended that the amount of bail be set in the sum of $ _____, returnable forthwith.

KEITH SILVA

SWORN TO BEFORE ME AND SUBSCRIBED
IN MY PRESENCE THIS  1st  DAY OF
July, 2003

UNITED STATES MAGISTRATE JUDGE

CASE NUMBER: 03-

# United States District Court
## District of New Jersey

UNITED STATES OF AMERICA

v.

JON EDWARD PICKERING
A/K/A, "EDWARD JON PICKERING"

# INDICTMENT FOR

18 U.S.C. §§ 1343, 371 and 2

CHRISTOPHER J. CHRISTIE
*U.S. ATTORNEY*
*NEWARK, NEW JERSEY*

SHERRY HUTCHINS
*ASSISTANT U.S. ATTORNEYS*
*NEWARK, NEW JERSEY*
*973-645-2723*

```
                        FILED

                      JUN 1 3 2003
[1998R00944/SAH]                           UNITED STATES DISTRICT COURT
                 AT 8:30_____M   DISTRICT OF NEW JERSEY
                    WILLIAM T. WALSH
                        CLERK
```

UNITED STATES OF AMERICA          :    Hon.

        v.                        :    Criminal No. 03-456 (WHW)

JON EDWARD PICKERING              :    18 U.S.C. §§ 371, 1343 &
a/k/a, "Edward Jon Pickering"          2

## INDICTMENT

The Grand Jury in and for the District of New Jersey, sitting in Newark, charges:

### COUNT 1
(Conspiracy to Commit Wire Fraud)

1. At all times relevant to this Indictment:

   a. Defendant JON EDWARD PICKERING, a/k/a "Edward Jon Pickering", a resident of Hawaii, and others operated a telemarketing business under the name of Stern & Ellis;

   b. Stern & Ellis, located in Rutherford, New Jersey, held itself out to be a legitimate purchaser and seller of silver, whereas it was used as a vehicle to defraud persons induced to purchase and sell silver and other precious metals and;

   c. Silver bullion had a substantially higher market value than silver coins.

### The Conspiracy

2. From at least as early as August 26, 1997 through on or about June 15, 1998, at Rutherford, in the District of New

Jersey and elsewhere, the defendant

JON EDWARD PICKERING
a/k/a, "Edward Jon Pickering"

did knowingly and willfully combine, conspire and agree with others to commit an offense against the United States, that is: to devise a scheme and artifice to defraud elderly customers and to obtain money and property from those customers by means of materially false and fraudulent pretenses, representations and promises, through the use of an interstate wire communication, contrary to Title 18, United States Code, Section 1343.

## The Object of the Conspiracy

3. The object of the conspiracy was to fraudulently obtain money and property from elderly customers by deceiving those customers into believing that what they were purchasing through Stern & Ellis was silver bullion rather than silver coins and by deceiving these customers into believing that the fair market value of the silver coins that they purchased through Stern & Ellis was substantially higher than in fact it was.

## The Means and Methods of the Conspiracy

4. It was a part of the conspiracy that, in or about September 1997, defendant PICKERING entered an office service contract on behalf of Stern & Ellis with the Office Gallery at the Meadowlands, Inc., located at 301 Route 17 North, Rutherford, New Jersey (hereinafter, "Office Gallery"). Pursuant to the contract, the Office Gallery provided secretarial, banking and

mail receiving services to Stern & Ellis.

5. It was also part of the conspiracy that, in or about September 1997, defendant PICKERING opened a bank account in the name of Stern & Ellis at the Trust Company Bank of New Jersey (hereinafter, "Stern & Ellis Bank Account"), which maintained a branch office at 301 Route 17 North, Rutherford, New Jersey.

6. Co-conspirators of defendant PICKERING purchased telemarketing leads (names and telephone numbers of prospective customers) of persons who were age 65 or older. The co-conspirators thereafter contacted individuals on these lists and induced them to purchase what they believed was either silver bullion or coins with substantially more value than the actual market value.

7. Co-conspirators of defendant PICKERING directed the customers to send funds, and in some instances to send previously purchased precious metals, to Stern & Ellis at the Office Gallery address in Rutherford. Funds received from those customers were deposited into the Stern & Ellis Bank Account.

8. At the direction and control of defendant PICKERING, approximately 50% of the customers' funds that were deposited into the Stern & Ellis Bank Account were immediately wire transferred into one or more of defendant PICKERING's personal bank accounts at the Bank of Hawaii. A substantial portion of the funds transferred into those personal bank accounts were

withdrawn in cash by defendant PICKERING.

9. The remaining funds in the Stern & Ellis Bank Account were primarily used by defendant PICKERING to purchase silver coins from commodities dealers. The funds were wire transferred from the Stern & Ellis Bank Account to commodities dealers' accounts. Defendant PICKERING never purchased silver bullion for customers as was represented to some of the customers.

10. After purchasing the silver coins, defendant PICKERING mailed confirmation letters to customers detailing the number of ounces purchased, "SAE" (Stern & Ellis) price per ounce and the total dollar amount charged to the customers. The confirmation letters did not indicate the price per ounce that Stern & Ellis paid to purchase the silver coins or the commission, if any, that Stern & Ellis was to receive for making the transaction.

11. It was a further part of the conspiracy that, from in or about October 1997 through in or about June 1998, defendant PICKERING and his co-conspirators fraudulently obtained and kept for their own personal use, an amount exceeding $70,000, from customers who were induced to believe either that what they were purchasing was silver bullion or coins with substantially higher fair market value than represented.

12. It was further part of the conspiracy that, on or

about April 13, 1998, defendant PICKERING sent letters to customers advising them that "due to pending litigation, Stern & Ellis [was] forced to close it's doors". In the letter, defendant PICKERING offered the Stern & Ellis' customers the option of receiving the silver that was purchased by Stern & Ellis on their behalf or the silver's liquidation value in cash. Subsequently, defendant PICKERING provided the customers with less than 50% of their initial investment, if anything at all.

13. It was further part of the conspiracy that, on or about June 15, 1998, defendant PICKERING used his preexisting personal bank account held in the name of "Edward Jon Pickering" at the Wells Fargo Bank in San Francisco, California (hereinafter, "Wells Fargo Bank Account") to receive a wire transfer in the amount of $10,163.70 from the Stern & Ellis Bank Account. The wire transfer represented the remaining funds contained in the Stern & Ellis Bank Account on that date. These funds were converted by defendant PICKERING for his own use notwithstanding that he had not satisfied some of the customers' legitimate claims to the silver or the silver's liquidation value.

## OVERT ACT

14. In furtherance of the conspiracy and to effect its object, defendant PICKERING and others committed and caused to be committed the following overt act in the District of New Jersey and elsewhere:

a. On or about June 15, 1998, defendant PICKERING caused a wire transfer in the amount of $10,163.70 to be sent from the Stern & Ellis Bank Account to the Wells Fargo Bank Account.

All in violation of Title 18, United States Code, Section 371.

COUNT 2
(Wire Fraud)

1. Paragraphs 1 and 3 through 14 of Count 1 are realleged and incorporated herein by reference.

2. From at least as early as August 26, 1997 through on or June 15, 1998, defendant PICKERING did knowingly and willfully devise and intend to devise a scheme and artifice to defraud elderly customers and to obtain money and property from those customers by means of materially false and fraudulent pretenses, representations and promises, through the use of an interstate wire communication, which scheme and artifice was in substance set forth in paragraphs 3 through 14 of Count 1.

3. On or about June 15, 1998, at Rutherford, in the District of New Jersey, and elsewhere, for the purpose of executing and attempting to execute a scheme and artifice to defraud, the defendant

JON EDWARD PICKERING
a/k/a "Edward Jon Pickering"

did knowingly and willfully cause to be transmitted by means of a wire communication in interstate commerce, a wire transfer in the amount of $10,163.70, from the Stern & Ellis Bank Account in New Jersey to the Well Fargo Bank Account in California.

In violation of Title 18, United States Code, Sections 1343 and 2.

A TRUE BILL

FOREPERSON

CHRISTOPHER J. CHRISTIE
UNITED STATES ATTORNEY